MAY 8 2024 PM4:01
FILED - USDC - FLMD - ORL

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MAHDIABDUL WILKERSON, a Florida resident | § § § § § |
| Plaintiff, | § § |
| v. | § § § |
| STEINGER, ISCOE & GREENE - II, P.A., a Florida Professional Association, and QUINTESSA LLC, d/b/a QUINTESSA MARKETING, a Oklahoma Limited Liability Company, | § § § § § § |
| Defendants. | § § § |

6:24 cv869 - WWB-LHP.

## PLAINTIFF'S ORIGINAL COMPLAINT:

Pro Se Plaintiff MAHDIABDUL WILKERSON, brings this action against Defendant STEINGER, ISCOE, & GREENE – II, P.A., and QUINTESSA LLC, d/b/a QUINTESSA MARKETING for violations of the federal Telephone Consumer Protection Act ("TCPA") and its implementing regulations alleging as follows:

## PRELIMINARY STATEMENT:

1.    As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—

1

3.7 million complaints in 2019 alone...For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.     Plaintiff MAHDIABDUL WILKERSON ("Plaintiff" or "Wilkerson") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant through QUINTESSA LLC, Defendant STEINGER, ISCOE, & GREENE – II, P.A. sent a series of telemarketing calls for the purposes of commercial solicitation by contacting Plaintiff's personal telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

3.     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## PARTIES:

4.     The Plaintiff is MAHDIABDUL WILKERSON ("Plaintiff") or ("Wilkerson"), a natural person, who resides in Orlando, Florida, is a citizen of the State of Florida, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Florida during the calls, in this case in Orange County, Florida.

5.     Defendant STEINGER, ISCOE, & GREENE – II, P.A. ("Steinger") is a Professional Association organized and existing under the laws of Florida and can

2

be served via registered agent Sean Jay Greene at 2727 NW 62 Street Fort Lauderdale, Florida 33309, United States.

6.      Defendant Quintessa LLC, d/b/a QUINTESSA MARKETING ("Quintessa") is a Limited Liability Company organized and existing under the laws of Oklahoma and can be served via registered agent Lauren Von McNeil at 1900 NW Expressway Suite 1600 Oklahoma City, Oklahoma 73118, United States.

## JURISDICTION AND VENUE

7.      **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the Florida Telemarketing Act because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff; adds little complexity to the case.

8.      **Personal Jurisdiction**. This Court has general personal jurisdiction over Steinger because they are a Florida Professional Association.

9.      This Court has specific personal jurisdiction over Quintessa because:

a. Quintessa intentionally targets Florida when marketing legal services for Steinger;

b. Quintessa purposefully sent phone calls to Plaintiff's Florida area code phone number to generate leads for Steinger;

c. Steinger directed that Quintessa's calls to be sent into Florida and purposefully directed that Florida residents be targeted with solicitation phone calls;

d. The purposeful calls to Florida injured Plaintiff in Florida, creating a causal link among Quintessa, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont.* Eight Jud. Dist. Ct., 141 S. Ct. 1017 (2021).

10.   **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims - the calls and sale of goods and services – occurred in this District and because Plaintiff resides in this District.

### Statutory Background

### The Telephone Consumer Protection Act

11.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## The TCPA Prohibits Automated Telemarketing Calls

12.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

14.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re*

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

17.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

6

18.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5). The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission Telemarketing Calls.

20.     Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.* 47
> U.S.C. § 217 (emphasis added).

21.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson's Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-

16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FLORIDA TELEMARKETING SALE ACT FLA. Stat. § 501.059

22.     Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

23.     A "telephone sales call" is defined as a 'telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

24.     "Doing business in this state" means businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

25.     "Prior express written consent" means an agreement in writing that: Fla. Stat. § 501.0059(g).

a.  Bears the signature of the called party;

8

b. Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

c. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

d. Includes a clear and conspicuous disclosure informing the called party that;

   1. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

   2. He or he is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

9

26. A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

27. If the court finds that the Defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

28. A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

29. A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

30. In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court

costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

31. Steinger provides legal services to people in Florida and nationwide.

32. Quintessa provides telemarketing services for Steinger.

33. Through Quintessa, Steinger routinely violates the TCPA as a part of its business model and knowingly and willfully commits TCPA violations.

34. Quintessa was hired by Steinger to solicit on its behalf since Steinger is barred by ethics from directly placing unsolicited phone calls on their own behalf.

35. Plaintiff did not consent to any of the phone calls alleged herein.

36. On November 23, 2023, Plaintiff personally and successfully added his telephone number, which ends in -4467, to the National Do-Not-Call Registry ("DNC").

37. Plaintiff's phone ending in 4467 is his personal and private phone that is not used for business purposes.

38. Plaintiff has received at least five (5) unauthorized calls from Quintessa's in-house employee "Cam" soliciting auto accident claim legal services for Steinger between March 18, 2024, and March 26, 2024, to his personal phone number (321) 465-4467.

39.   **Calls 1-4, DNC Requests 1-4, See Table A:** Between March 18, 2024, and March 25, 2024, Plaintiff received at least four (4) phone calls from Quintessa's employee "Cam" claiming to be calling from "Auto accident claim helpline" asking Plaintiff if he had been in a recent car accident, and soliciting Plaintiff with Steinger's legal services.

40.   On each of the four calls described above from Quintessa's employee "Cam", Plaintiff informed the agent that he was never in an accident, to not call back, and hung up.

41.   **Call 5:** On March 26, 2024, at 11:52 AM, Plaintiff received a call from Quintessa's employee "Cam" claiming to call from "Auto Accident Claim Helpline" with 321-956-3091 appearing on his Caller Identification.

42.   Plaintiff had his girlfriend Sommer take the call to verify the true identity of the company that was responsible for the calls he had been receiving over the last week about auto accident claims.

43.   Cam asked Plaintiff's girlfriend Sommer if she had been in a recent auto accident and informed her that his firm could provide legal services to receive compensation for said accident.

44.   Plaintiff's girlfriend Sommer engaged Cam and told her she had been in an accident for the sole purpose of confirming the true identity of Cam's employer.

12

45. Cam transferred Sommer internally to another employee of Quintessa named Reese who gathered some information from Sommer.

46. Reese then transferred Sommer internally to another employee of Quintessa named Daisy who gathered more information from Sommer and sent her an email from documents@accidentintakeforms.com with a contract from Steinger.

47. On April 16, 2024, Plaintiff called each of the phone numbers listed in Table A, column titled "Caller ID". Each of the phone numbers is either a non-working number, or is routed to a fax machine, evidence of spoof technology being used.

48. The following is a table detailing the telephone calls sent by Defendant to Plaintiff's cell phone number:

**Table A**

| NO: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | Mar 18, 2024 | 11;05 AM | 321-802-9465 | Call from Cam w/ Auto Accident Claim Helpline - DNC Request #1 |
| 2. | Mar 19, 2024 | 5:41 PM | 321-972-2079 | Call from Cam w/ Auto Accident Claim Helpline - DNC Request #2 |
| 3. | Mar 25, 2024 | 12:16 PM | 321-972-8476 | Call from Cam w/ Auto Accident Claim Helpline - DNC Request #3 |
| 4. | Mar 25, 2024 | 1:55 PM | 321-972-2079 | Call from Cam w/ Auto Accident Claim Helpline - |

| | | | | DNC Request #4 |
|---|---|---|---|---|
| 5. | Mar 26, 2024 | 11:52 AM | 321-956-3091 | Call from Cam w/ Auto Accident Claim Help Line - Received documents |

49. Plaintiff was not interested in Steinger's legal services or Steinger's marketer Quintessa's solicitations for Steinger's legal services.

50. At no point did Plaintiff ever waive his right to sue Steinger or Quintessa under the TCPA or any Florida state law.

51. Steinger and Quintessa did not have Plaintiff's consent to make any of these unsolicited calls.

52. Steinger and Quintessa did not have Plaintiff's prior express consent (oral or otherwise) to make any of these telemarketing calls.

53. Prior to these unsolicited telephone communications, Plaintiff had never done any business with Defendant Steinger or Quintessa, and Plaintiff never provided Defendants with his telephone number.

54. To the extent that Defendants Steinger and Quintessa contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Steinger can show that they had prior express consent in writing and that they have otherwise complied with all of the requirements of 47

14

C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Steinger did not have prior express written consent to such calls from Plaintiff.

55.   Plaintiff is informed and believes and thereon alleges that Defendants Steinger and Quintessa does not have policies and procedures in place to prevent telephone solicitations in violation of the TCPA regulations.

56.   Upon information and belief, Steinger and Quintessa do not scrub their calling lists against the National Do-Not-Call Registry.

57.   Upon information and belief, Steinger and Quintessa do not train their employees and representatives in order to comply with "Do-Not-Call requests" made by consumers, such as Plaintiff. As demonstrated in the above allegations, Steinger's marketer Quintessa did not stop calling Plaintiff's phone number when they were told to stop calling.

58.   Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

59.   Plaintiff received the calls on his private telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered

with Metro by T Mobile as a cellular telephone number and is used for personal purposes.

60.    These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

61.    Steinger and Quintessa are not exempt from the TCPA. Steinger's and Quintessa's calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

62.    Steinger's marketer Quintessa's calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

## VICARIOUS LIABILITY OF STEINGER FOR CALLS MADE BY ITS MARKETER QUINTESSA

63.    Defendant Steinger must be held liable for hiring Quintessa to market on its behalf in an attempt to circumvent it being barred to telephone solicit on its own behalf.

64.    To not hold Steinger liable would allow them to continue to break laws that are implemented to protect the privacy rights of US citizens.

65.    Steinger is fully aware of the laws and regulations preventing them from making telephone solicitations on its own behalf, and yet violates these laws by attempting to avoid liability by hiring outside marketing teams to do their soliciting through calling for them.

66.    Steinger set guidelines, requirements, qualifications, for Quintessa, and instructed Quintessa on which areas to call.

67.    Steinger didn't receive Plaintiff's girlfriend Sommer blindly as a potential client through telemarketing means.

68.    Steinger paid, hired, and trained Quintessa to specifically market for its company solely.

69.    Steinger set the criteria for qualifying leads, which Quintessa must follow.

70.    Steinger wrote the script, or at least approved the script, that Quintessa used to market Steinger's services.

71.    Steinger instructed Quintessa on which geographic locations to call.

72.    Steinger exercised control over Quintessa by prescribing the manner in which Quintessa may solicit consumers.

73.    Steinger maintained interim control over Quintessa by controlling the manner and means, and under what circumstances they would accept referrals.

## SUMMARY

74.    Plaintiff received five (5) telemarketing calls from Defendant Steinger's marketer Quintessa to Plaintiff's personal telephone number which is registered on the National Do-Not-Call list. Plaintiff made at least four (4) do not call requests to Steinger's marketer Quintessa that were ignored.

17

75. Steinger's marketer Quintessa intentionally spoofed the caller identification on every phone call at issue in this Complaint in violation of Fla. Stat. § 501.616(7)(b).

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

76. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

77. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

78. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

79. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's Cell Phone is a Residential Number

80. The calls were to Plaintiff's cellular phone (321) 465-4467 which is Plaintiff's personal telephone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at

18

least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION

### I.    FIRST CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)**

**(Against All Defendants)**

81.    Plaintiff re-alleges and re-adopts paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

83.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

19

84.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

85.    As a result of Defendant's and Defendant's employees' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

86.    Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing calls to cellular telephone numbers without the prior express written consent of the called party.

**SECOND CLAIM FOR RELIEF:**
**(Violations of Fla. Stat. 501.059)**
**(Against All Defendants)**

87.    Plaintiff incorporates the preceding paragraphs 1-80 as if fully set forth herein.

88.    Defendant and/or their affiliates and authorized representatives made a telephone call to Plaintiff for the purpose of soliciting a sale of consumer goods or services. Fla. Stat. § 501.059(j).

20

89.    Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(j) pursuant to Fla. Stat. § 501.059(10)(a)(2).

90.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Fla. Stat. § 501.059(10)(a)(b).

## II.    THIRD CLAIM FOR RELIEF:

### (Violations of Florida TELEMARKETING ACT)
### (Against All Defendants)

91.    Plaintiff re-alleges and re-adopts paragraphs 1 through 80 of this Complaint as if fully set forth herein.

92.    Defendant called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information. Fla. Stat. 501.616(7)(b).

93.    Damages for Fla. Stat. § 501.616(7)(b) are analogous to the TCPA and numerous state laws, including Fla. Stat. § 501.059, that were implemented to protect consumer telephone privacy rights. The federal and state programs have almost universally set the penalties for such violations at a minimum of $500. States have further followed the Federal lead allowing for treble damages up to $1,500 per call per violation. Based on precedent it would be

customary and not out of the ordinary to base an award for FTA violations on the standard $500 - $1,500 per violation.

94.    In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mahdiabdul Wilkerson prays for judgment jointly and severally against the Defendants as follows:

A.    Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violates the TCPA and Florida state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An Award of $1,500 per violation in statutory damages arising for the intentional violations of Fla. Stat. 501.059 for five (5) violations.

E.      An award of $1,500 per call in statutory damages arising from the TCPA intentional violations against the corporation for five (5) calls.

F.      An award of $1,500 per violation in statutory damages arising for the intentional violations of Fla. Stat. § 501.616(7)(b) for five (5) violations.

G.      An award to Plaintiff of damages, as allowed by law under the TCPA;

H.      An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity;

I.      Such further relief as the Court deems necessary, just, and proper.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 07, 2024,                    Respectfully submitted,

Mahdiabdul Wilkerson
Plaintiff, Pro Se
14855 Hawksmoor Run Circle
Orlando, Florida 32828
Mahdi.wilk@gmail.com
407-731-3094

23